UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAND INNOVATORS CO. L.P., *et al.*, <br>  *Plaintiffs/Counter-Defendants*, <br> <br> *vs.* <br> <br> AMERISURE MUTUAL INSURANCE COMPANY, <br>  *Defendant/Counter-Plaintiff.* <br> _____ <br> <br> AMERISURE MUTUAL INSURANCE COMPANY, <br>  *Counter-Plaintiffs*, <br> <br> *vs.* <br> <br> MICHAEL L. BOGAN, *et al.*, <br>  *Additional Counter-Defendants.* | 1:12-cv-175-JMS-TAB |

## **ORDER**

Presently pending before the Court is Defendant/Counter-Plaintiff Amerisure Mutual Insurance Company's ("Amerisure") Motion for Summary Judgment. [Dkt. 57.] Amerisure argues that it is entitled to summary judgment in its favor on Plaintiff/Counter-Defendants Land Innovators Co. L.P. ("LILP") and R.N. Thompson's (collectively, the "Plaintiffs") claims for declaratory judgment and reformation. For the following reasons, the Court denies Amerisure's Motion for Summary Judgment.

**I.**
**STANDARD OF REVIEW**

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a

material issue for trial.  Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. Pro. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. Pro. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. Pro. 56(c)(4).   Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment.  Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003).  Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment.  *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact.  *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).  And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and re-

solve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

## II.
### BACKGROUND

The following facts are primarily undisputed, except as noted. Where there is a genuine dispute, all reasonable inferences are made in favor of the Plaintiffs, the non-movants.

### A. Land Innovators Entities

LILP was formed as an Indiana limited partnership in May 1988. [Dkt. 1-3 at 1.] A limited partnership agreement also signed in May 1988 provided that LILP's term of existence would expire on December 31, 1999. [*Id.* at 3.] LILP had three partners: Mr. Thompson (general partner); John Whitlock (limited partner); Tom Rush (limited partner). [Dkt. 50 at 2.]

Land Innovators Company, Inc. was formed as an Indiana corporation in August 1992 and was administratively dissolved in July 1995. [Dkt. 59-12 at 25.] Land Innovators Company, Inc. had the same ownership structure as LILP. [Dkt. 59-11 at 5.]

The Plaintiffs argue that "only one Land Innovators entity actually operated from which a liability exposure might exist" and that R.N. Thompson & Associates, Inc. ("RNTA") was the "driver of the business." [Dkt. 60 at 10.] Sonya Timmerman—the Controller for RNTA—testified that Land Innovators Company, Inc. was merged into LILP. [Dkt. 61-4 at 4.] She further testified that the Land Innovators entities only had one federal ID number and it always operated as a limited partnership, "whether or not it was stated as such." [*Id.*]

### B. Insurance Policies at Issue

Amerisure issued commercial general liability ("CGL") policies to RNTA. [Dkts. 32-1; 32-11.] The two policies at issue had respective effective dates of October 1, 2001 - October 1, 2002 and October 1, 2002 - October 1, 2003. [*Id.*] RNTA was the "named insured" on both pol-

icies, [dkts. 32-1 at 2; 32-11 at 2], and the named insured endorsement for each policy listed almost 30 additional insureds, including "Land Innovators, Inc." and "RN Thompson," [dkts. 32-1 at 8; 32-11 at 3]. LILP was not listed on either endorsement. [*Id.*] The schedule of supplementary names did not list the type of entity that "Land Innovators, Inc." was considered. [Dkt. 61-2 at 3.]

> The "Who is an Insured" portion of the policies provided as follows:
>
> 1. If you are designated in the Declarations as:
>
>     a. An individual, you and your spouse are insured, but only with respect to the conduct of a business of which you are the sole owner.
>
>     b. A partnership or joint venture, you are an insured. Your members, partners, and their spouses are also insureds, but only with respect to the conduct of your business.
>
>     \*\*\*
>
>     d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
>
>     \*\*\*
>
> No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

[Dkts. 32-4 at 35-36; 32-14 at 27, 30.]

### C. Underlying Litigation in State Court

On August 31, 2005, Michael L. Bogan and Melody A. Bogan filed a complaint in the Hamilton Superior Court against John McKenzie, personally, d/b/a Homes by John McKenzie ("McKenzie"); Trinity Homes LLC; Trinity Homes, Inc.; Beazer Homes; and RNTA. [Dkt. 59-1 at 2.]

The Bogans filed a first amended complaint on December 21, 2006, asserting claims against the parties named in their initial complaint and adding claims against LILP and Mr. Thompson, personally and as general partner of LILP. [Dkt. 1-4.] Specifically, the Bogans alleged that in May 1998, they entered into a purchase agreement with McKenzie for the construction of a single-family residence with a walkout basement to be located in the Lake Stonebridge subdivision in Fishers. [*Id.* at 4.] They further alleged that at all relevant times, LILP was a developer of Lake Stonebridge. [*Id.* at 3.]

The Bogans contended that they were not informed that a certain threshold was required for the lowest floor elevation to comply with the 100-year flood elevation established for Lake Stonebridge or that their home was not constructed so that the lowest floor elevation was at or above that threshold. [*Id.* at 5.] The Bogans alleged that on September 1, 2003, their home sustained damage in excess of $50,000 when storm water caused Lake Stonebridge to overflow into the lower level of their home. [*Id.* at 5.] The Bogans further alleged that LILP, RNTA, Mr. Thompson and their agents were the sole members of the Architectural Control Committee of the Lake Stonebridge Homeowners Association and that those parties "had a contractual duty to review and approve the building plans, specifications and plot plans, including the location, finished ground elevations, and minimum building pad elevation" of the Bogans' home prior to its construction, but that they failed to do so. [*Id.* at 9-10.] The Bogans asserted claims for constructive fraud, breach of contract/breach of implied warranty of habitability, and negligence against LILP and Mr. Thompson. [*Id.* at 14-29.]

### D.  Request for Coverage

On January 4, 2007, the Plaintiffs' counsel sent a letter to a representative of MJ Insurance, Inc. ("MJ"), enclosing a copy of the Bogans' first amended complaint in the state court

lawsuit and requesting that they "discuss whether there is insurance coverage applicable to this lawsuit."[1] [Dkt. 1-4 at 31.]

On March 2, 2007, Amerisure issued a letter confirming its receipt of the Bogans' first amended complaint, providing a defense under a reservation of rights for RNTA, but declining to defend LILP or Mr. Thompson. [*Id.* at 33, 38.] Amerisure declined to defend those parties because "they are not a Named Insured under the policy." [*Id.* at 38.]

Amerisure retained defense counsel for RNTA, and RNTA ultimately settled with the Bogans and was dismissed from the state court litigation with prejudice on January 9, 2009. [Dkt. 59-2 at 2.] Amerisure closed its file after the Bogans' claims against RNTA were settled because LILP and Mr. Thompson had not challenged Amerisure's denial of coverage. [Dkt. 59-13 at 7-8.] Additionally, Amerisure destroyed the documents in its underwriting file. [Dkt. 59-14 at 5.]

On February 21, 2007, Plaintiffs' counsel sent a letter to an MJ representative, explaining that he had just talked to Rita Zaichek from Amerisure and that she had informed him that it had "Land Innovators, Inc. as a named insured, but not the entity named in the Complaint, which was Land Innovators Company, L.P. She also told me that they do not insure R.N. Thompson personally." [Dkt. 59-15 at 25.] Counsel expressed his belief that the policy covered R.N. Thompson individually and that "while the Information Schedule does list this entity as Land Innovators, Inc., it also identifies it as a partnership and identifies the individual partners." [*Id.*] In a series of emails between Ms. Timmerman—the Controller for RNTA—and MJ, Ms. Timmerman

---

[1] MJ had an agency agreement with Amerisure, [dkt. 61-3 at 21-26], but the parties dispute whether any knowledge MJ had about the Plaintiffs could be imputed to Amerisure. For reasons detailed in the discussion, the Court ultimately disagrees with Amerisure's contention that the nature of its relationship with MJ is "irrelevant." [Dkt. 68 at 3, 15.] The Court need not detail or analyze that relationship for purposes of summary judgment, however, since Amerisure limits its argument to that position.

represented that "[t]here is only one Land Innovators and it is a partnership. In our files the official name was Land Innovators Company." [Dkt. 59-12 at 18.]

On May 17, 2011, the Plaintiffs' counsel sent a letter to Amerisure concluding that Amerisure was "mistaken about the lack of coverage for these two entities" under the relevant policies when it denied coverage on March 2, 2007. [Dkt. 59-12 at 20.] In relevant part, the letter provided as follows:

> As we can explain and reflected in the attached documentation, at the time the Amerisure policy was issued in 2001, there did not exist a Land Innovators, Inc. The only entity with the terms "Land Innovators" in the name was Land Innovators, L.P. This Land Innovators, L.P. is the entity which has been sued by the Bogans. . . . Obviously, there has been a mutual mistake in the listing of the entity Land Innovators, Inc. as opposed to Land Innovators, L.P. on the Amerisure policy.
>
> ***
>
> Land Innovators Company, Inc., while at one time initiated by some of the same members of the Land Innovators Company, L.P. was dissolved in 1995 and it never actually did business at all . . . . Our clients request that Amerisure review the documents attached hereto and our evaluation and reconsider its previous coverage position as express in the letter of March 2, 2007.

[Dkt. 59-12 at 21, 24.]

On September 19, 2011, Amerisure responded to the request for reconsideration and maintained its denial of coverage because neither LILP nor Mr. Thompson was named as an insured on the policy. [Dkt. 1-4 at 40-42.]

### E.  Second Amended Complaint

On August 10, 2012, the Plaintiffs sent a letter to Amerisure notifying them that the Bogans had filed a second amended complaint in the underlying state court litigation on May 16, 2012. [Dkt. 59-13 at 9.] In that complaint, the Bogans added claims for damages related to another flooding incident that occurred in February 2011. [*Id.* at 14.] Additionally, the Bogans

added a claim for abuse of process against LILP and Mr. Thompson. [*Id.* at 15.] Those parties tendered their defense of the second amended complaint to Amerisure in that letter. [*Id.* at 9.]

Amerisure responded on February 13, 2013, and again declined to defend or indemnify LILP or Mr. Thompson. [*Id.* at 59-13 at 10-13.] Amerisure incorporated its previous denial letters and again denied coverage because those parties were not named insureds under the policies. [*Id.* at 11-12.] Additionally, Amerisure denied coverage because reformation of the policies would be futile because of a professional liability exclusion contained in the policies. [*Id.* at 12.] Amerisure denied coverage for damages from the February 2011 flood because "[g]iven the prior flooding . . . this is precluded from coverage by the known loss/deemer clause." [*Id.* at 12.]

Amerisure issued successive CGL policies to RNTA through October 1, 2011. [Dkts. 59-3 to 59-10.] "Land Innovators, Inc." was listed on the Named Insured Endorsement Declaration for each of those policies, not LILP. [*Id.*] The Plaintiffs admit that they did not request that name to be changed to reflect LILP, but they contend that they had previously supplied the correct information to MJ, which they argue also bound Amerisure. [Dkt. 60 at 23.] Specifically, the Plaintiffs point to a spreadsheet for a renewal effective in October 2005, on which MJ listed "Land Innovators Inc." as a partnership. [Dkt. 61-2 at 19.]

### F. Coverage Litigation in Federal Court

In January 2012, the Plaintiffs filed a Complaint for Declaratory Judgment and Reformation of Insurance Contract against Amerisure in state court. [Dkt. 1-2 at 1.] Amerisure removed the state court action to this Court in February 2012. [Dkt. 1.] In its Answer, Amerisure asserted a counterclaim against the Plaintiffs, seeking its own declaratory judgment regarding the insurance policies at issue. [Dkt. 12.] Amerisure filed an Amended Answer and Counterclaim in July 2012, with leave of Court, asserting the same counterclaim against the Plaintiffs and adding

the Bogans as nominal parties whose interests may be affected by the litigation. [Dkt. 30 at 10.] Amerisure does not seek relief against the Bogans.[2] [*Id.*] Amerisure now moves for summary judgment on its counterclaim against the Plaintiffs. [Dkt. 57.]

### III.
#### DISCUSSION

The Plaintiffs acknowledge that LILP is not listed as a named insured on the policies and that because it is not listed, Mr. Thompson would not be covered in his capacity as a partner of LILP because he is not the sole owner. [Dkt. 60 at 17 (admitting that "technically, the language of the insurance policy would support Amerisure's conclusions").] They emphasize, however, that they seek reformation of the insurance policy language to correct a mutual mistake in the policies. [*Id.*]

Amerisure argues that the Court should grant summary judgment in its favor on the Plaintiffs' reformation claim for three reasons: 1) the Plaintiffs' reformation claim is barred by the doctrine of laches; 2) the Plaintiffs cannot establish a mutual mistake entitling them to reformation; and 3) reformation would be futile because coverage would be excluded under the professional services exclusion. [Dkt. 58 at 13-28.] The Plaintiffs dispute each of those arguments, and the Court will address them in turn.

**A.  Laches**

Amerisure argues that the Plaintiffs are not entitled to reformation of the insurance policies because it contends that Plaintiffs' claim is barred by the equitable doctrine of laches. [Dkt.

---

[2] As the Seventh Circuit Court of Appeals has recognized, "Indiana is not a direct action state; tort claimants may not directly sue an insurer for damages or a declaratory judgment stemming from damage caused by an insured, under the rationale that the claimant is a stranger to the insurance contract. The question of whether a particular policy covers the tortfeasor does not implicate the legal rights of tort claimants." *United States Fire Ins. Co. v. Charter Financial Group, Inc.*, 851 F.2d 957, 959 (7th Cir. 1988) (citations omitted).

58 at 14-17.] Amerisure emphasizes that the Plaintiffs had knowledge of the alleged mutual mistake in 2007 when Amerisure denied coverage, but that they did not officially challenge that denial until 2011. [*Id.* at 15-16.]

The Plaintiffs respond that laches is a "drastic hammer" and inappropriate in this situation. [Dkt. 60 at 2.] While it appears that the Plaintiffs did not file an official challenge to the 2007 denial until 2011, they argue that is not germane because there is evidence that they challenged it to MJ, which they contend binds Amerisure. [*Id.* at 22.] The Plaintiffs also argue that there is a fact issue on the prejudice element of laches because Amerisure chose to destroy certain files before the statute of limitations had run on a breach of contract claim and because the underlying *Bogan* case is still pending in state court. [*Id.* at 24.]

The Court is exercising diversity jurisdiction over the parties' claims, [dkt. 50]; therefore, state law provides the substantive principles that guide the Court's analysis, *BKCAP, LLC v. Captec Franchise Trust 2000-I*, 572 F.3d 353, 359 (7th Cir. 2009).

Laches is an equitable doctrine that is "long recognized" and "well established." *SMDfund, Inc. v. Fort Wayne-Allen County Airport Auth.*, 831 N.E.2d 725, 728-729 (Ind. 2005). Independent of any statute of limitations, courts can "decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them." *Id.* at 729; *see Shafer v. Lambie*, 667 N.E.2d 226, 231 (Ind. Ct. App. 1996) (laches can apply even if the statute of limitations has not run). Laches requires three things: 1) inexcusable delay in asserting a known right; 2) an implied waiver arising from knowing acquiescence in existing conditions; and 3) a change in circumstances causing prejudice to the adverse party. *SMDfund, Inc.*, 831 N.E.2d at 729.

Laches, however, does not turn on time alone. *Id.* at 731. "A mere lapse in time is insufficient; unreasonable delay which causes prejudice or injury is necessary." *Id.* Specifically, such

required prejudice "may be created if a party, with knowledge of the relevant facts, permits the passing of time to work a change of circumstances by the other party." *Id.*

The Court concludes that based on the record before it, it cannot apply laches as a matter of law on summary judgment. For example, with regard to the prejudice element, Amerisure claims it was prejudiced because it destroyed its records since it did not believe the Plaintiffs were challenging the denial. But Amerisure destroyed those records on its own initiative and at its own peril. It argues that it did so pursuant to its corporate policy, but it presents no evidence of such a policy. Moreover, also at issue is what MJ knew, and there are no allegations that any of MJ's files were destroyed or the extent to which the substance of Amerisure's files could be recreated from them. For these reasons, the Court cannot apply laches as a matter of law on summary judgment to bar the Plaintiffs' reformation claim.

### B.  Mutual Mistake

The parties dispute whether there was a mutual mistake concerning the Land Innovators entity to be insured, and specifically whether it was a partnership.

Amerisure argues that the Plaintiffs are not entitled to reformation because there was not a mutual mistake. [Dkt. 58 at 17-21.] It emphasizes that "Land Innovators, Inc." and LILP were separate entities and that a court should not reform a contract that a party failed to read or to give heed to its plain terms. [*Id.* at 20.] Amerisure argues that MJ's knowledge and any agency relationship the Plaintiffs contend MJ had with Amerisure is "irrelevant." [Dkt. 68 at 3, 15.]

The Plaintiffs argue that the policies should be reformed because "there is only one Land Innovators entity" and the parties intended to insure it. [Dkt. 60 at 17-18.] It emphasizes that Amerisure admits it does not check articles of incorporation on the Secretary of State's website, so it is irrelevant what designation was legally correct. [*Id.*] The Plaintiffs point to evidence es-

tablishing that at least by 2005, MJ knew that "Land Innovators, Inc." was a partnership, and they contend that this knowledge is imputed to Amerisure. [*Id.* at 18-19.] At bottom, the Plaintiffs contend that at the very least, there are issues of material fact regarding the parties' intentions to insure the Land Innovators entity listed on the policies. [*Id.* at 20-21.]

Reformation is "an extreme equitable remedy utilized to relieve the parties of mutual mistake or fraud." *Hudson v. Davis*, 797 N.E.2d 277, 283 (Ind. Ct. App. 2003). "In Indiana, courts may reform written documents in only two well-defined situations: (1) where there is a mutual mistake—meaning there has been a meeting of the minds, an agreement actually entered into, but the document in its written form does not express what the parties actually intended; or (2) where there has been a mistake by one party, accompanied by fraud or inequitable conduct by the remaining party." *Monroe Guar. Ins. Co. v. Langreck*, 816 N.E.2d 485, 490 (Ind. Ct. App. 2004). There is no allegation of fraud or inequitable conduct in this case; thus, the Court focuses solely on whether there was a mutual mistake accompanying the issuance of the insurance policies at issue. In such a case, "there can be no reformation unless it is proven that both parties were mistaken in the use of the terms to be corrected and that both parties agreed to the contract sought to be substituted for that to be set aside." *Id.* Reformations for mistakes are only available if they are mistakes of fact, not mistakes of law. *Id.* "Equity should not intervene and courts should not grant reformation if the party seeking reformation failed to read the instrument or, if it was read, failed to give heed to its plain terms." *Id.*

The Court concludes that based on the record before it on summary judgment, there are issues of material fact surrounding whether a mutual mistake occurred that could support reformation. As support for their contention that "only one Land Innovators entity actually operated from which a liability exposure might exist," [dkt. 60 at 10], the Plaintiffs cite testimony from

the Controller for RNTA, who testified that the Land Innovators entities only had one federal ID number and it always operated as a limited partnership, "whether or not it was stated as such." [Dkt. 61-4 at 4.] Amerisure does not dispute these contentions, but it does point out that there had been two Land Innovators entities at one point and that both may have been defunct at the time the policies were issued. [Dkt. 58 at 19.] On the other hand, it is undisputed that Amerisure does not evaluate the Secretary of State's website or articles of incorporation to determine information about the named insureds. [Dkt. 61-5 at 17-18.] The Court concludes that a more fully developed record and credibility determinations must be considered surrounding the Land Innovators entities and the parties' knowledge that cannot be made on summary judgment or on the basis of the present record.

Additionally, there is a spreadsheet in MJ's file listing "Land Innovators, Inc." as a partnership for purposes of an information schedule dated October 1, 2005. [Dkt. 61-2 at 19.] That spreadsheet lists Mr. Thompson as one of three members of that partnership. [*Id.*] Although the spreadsheet is dated after the policies at issue, it undisputedly precedes the Bogans suing the Plaintiffs in the state court litigation (2006) and the Plaintiffs requesting coverage under the policies (2007). Accordingly, there are issues of material fact surrounding the source and timing of MJ's knowledge that LILP was a partnership. Given that evidence, and the existence of the agency agreement between MJ and Amerisure, [dkt. 61-3 at 21-26], the Court also disagrees with Amerisure that MJ's knowledge and possibly agency status is "irrelevant." [Dkt. 68 at 3, 15.]

Making all reasonable inferences in favor of the Plaintiffs as it is required to do on summary judgment, the Court concludes that material issues of fact exist regarding whether a mutual mistake was made that would support reformation. The Court reiterates, however, that refor-

mation is an extreme equitable remedy that will not be afforded without evidence supporting a mutual mistake underlying the insurance policies at issue.

### C. Futility

Amerisure argues that even if there are issues of material fact surrounding the existence of a mutual mistake, it should receive summary judgment because reformation would be futile. [Dkt. 68 at 17-20.] Specifically, Amerisure points to a "Professional Services Exclusion" that it contends bars coverage for the Bogans' claims against the Plaintiffs. [*Id.*]

In their response, the Plaintiffs emphasize that the duty to defend is broader than the duty to indemnify and that if any of the allegations of the complaint are potentially covered under the insurance policy at issue, the complaint must be defended. [Dkt. 60 at 25-27.]

"Indiana law is clear that the duty to defend is broader than the duty to indemnify." *Indiana Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1267 (Ind. Ct. App. 2009). If the policy is otherwise applicable, the insurance company is required to defend even though it may not be responsible for all of the damages assessed. *Id.* It is well settled that where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim patently outside of the risks covered by the policy, the insurer may properly refuse to defend. *Newnam Mfg., Inc. v. Transcon. Ins. Co.*, 871 N.E.2d 396, 401 (Ind. Ct. App. 2007). "[A]n insurer who, after making an independent determination that it has no duty to defend, fails to protect its interest by either filing a declaratory judgment action for a judicial determination of its obligations under the policy or hiring independent counsel and defending its insured under a reservation of rights, does so at its own peril." *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 43 n.6 (Ind. 2002).

In relevant part, the Professional Services Exclusion in the insurance policies provides:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.
>
> Professional services include:
>
>> 1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>>
>> 2. Supervisory, inspections, architectural or engineering activities.

[Dkt. 32-5 at 27.]

After reviewing the underlying *Bogan* complaints and the parties' arguments, the Court cannot conclude at this time that reformation, should it be allowed, would be futile. The Bogans' allegations are very broad and encompass acts for which coverage would not be barred under the Professional Service Exclusion should the policies be reformed. Both of the *Bogan* complaints allege multiple claims against the Plaintiffs, including claims for negligence for allegedly breaching the standard of care by negligently designing, developing, engineering, investigating, grading, constructing, supervising, marketing, brokering, constructing and/or selling the Bogans' home. [Dkt. 1-4 at 27-28; 59-13 at 23.] Again, the duty to defend is broader than the duty to indemnify, and on this record, the Court cannot conclude that Amerisure is entitled to summary judgment as a matter of law on the basis of the Professional Services Exclusion.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **DENIES** Amerisure's Motion for Summary Judgment. [Dkt. 57.] The Court reminds the parties that it is making no favorable ruling on the Plaintiffs claim for reformation, which is an extreme equitable remedy. Likewise the Court is not barring the defense of laches or a futility argument. Inadequacy of the record and unresolved factual issues render disposition by dispositive motion unworkable.

- 16 -

This matter remains set for a final pretrial conference on **August 14, 2013**, and a bench trial beginning on **August 19, 2013**. The previously issued pretrial deadlines remain in effect. [Dkt. 73.]

07/22/2013

*[Signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Stephen J. Peters
HARRISON & MOBERLY
speters@harrisonmoberly.com

Ginny L. Peterson
KIGHTLINGER & GRAY
gpeterson@k-glaw.com

Scott Curtis Quick
SCOTT C. QUICK, LLC
quicklawoffice@gmail.com

David I. Rubin
HARRISON & MOBERLY
drubin@harrisonmoberly.com

Terrence J. Sorg
BROOKS KOCH & SORG
tjsorg@bksattorneys.com